# STATE OF MICHIGAN

# COURT OF APPEALS

BRIAN BECK, GUY HANSON, KAREN HANSON, RAYMOND FAVICHIA, MARGARET FAVICHIA, JUDITH SCHLEBECKER, JOHN SCHLEBECKER, and BERNADETT STEINER,

Plaintiffs,

and

AUDREY MAHONEY, DAVID OPPENHEIM, FELICE OPPENHEIM, and PATTY BROWN,

Plaintiffs-Appellants/Cross-Appellees,

v

PARK WEST GALLERIES, INC., ALBERT SCAGLIONE, MORRIS SHAPIRO, ALBERT MOLINA, and PLYMOUTH AUCTIONEERING SERVICES, LTD.,

Defendants-Appellees/Cross-Appellants.

UNPUBLISHED
March 3, 2015

No. 319463
Oakland Circuit Court
LC No. 2011-122042-CZ

Before: MURRAY, P.J., and HOEKSTRA and WILDER, JJ.

PER CURIAM.

Plaintiffs purchased artwork from defendant Park West Galleries, Inc. ("Park West"). They claim that some of the works were fraudulently represented, that they were overcharged, or that they did not receive what defendants represented they were purchasing. This action was originally filed by 13 plaintiffs, but most plaintiffs agreed to dismiss their claims, leaving only plaintiffs Audrey Mahoney, David Oppenheim, Felice Oppenheim, and Patty Brown (hereinafter "plaintiffs"). The trial court granted defendants' motion for summary disposition pursuant to MCR 2.116(C)(7) and dismissed all claims brought by plaintiffs Mahoney and Brown, and some of the Oppenheims' claims, on the ground that the claims were subject to an arbitration agreement. The court refused to dismiss any of the Oppenheims' claims that involved invoices

-1-

that did not contain an arbitration clause, concluding that the arbitration clauses in other invoices were not broad enough to subject all claims to arbitration. Defendants later filed a second motion for summary disposition pursuant to MCR 2.116(C)(7), requesting dismissal of the Oppenheims' remaining claims on the ground that they were barred by the statute of limitations. The trial court agreed and dismissed the remaining claims. The court rejected the Oppenheims' argument that the limitations period could be tolled under MCL 600.5855 because of fraudulent concealment. Plaintiffs now appeal as of right. Defendants have filed a cross-appeal, challenging the trial court's ruling that not all of the Oppenheims' claims were subject to arbitration. We affirm the trial court's ruling that the arbitration agreements were enforceable despite the challenge to the invoices as a whole, reverse the trial court's ruling that all of the Oppenheims' claims were not subject to arbitration, and remand for entry of an order granting defendants' motion for summary disposition. MCR 2.116(C)(7).

## I. ARBITRATION

The existence and enforceability of an arbitration agreement is a question of law that this Court reviews de novo. *Michelson v Voison*, 254 Mich App 691, 693-694; 658 NW2d 188 (2003). A trial court's summary disposition decision is also reviewed de novo. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). Summary disposition is appropriate under MCR 2.116(C)(7) when a claim is barred because of an agreement to arbitrate. The following standards apply to a motion under MCR 2.116(C)(7):

> A defendant who files a motion for summary disposition under MCR 2.116(C)(7) may (but is not required to) file supportive material such as affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(3); *Patterson v Kleiman,* 447 Mich 429, 432; 526 NW2d 879 (1994). If such documentation is submitted, the court must consider it. MCR 2.116(G)(5). If no such documentation is submitted, the court must review the plaintiff's complaint, accepting its well-pleaded allegations as true and construing them in a light most favorable to the plaintiff. [*Turner v Mercy Hosps & Health Servs of Detroit*, 210 Mich App 345, 348; 533 NW2d 365 (1995).]

If the pleadings or other documentary evidence reveal that there is no genuine issue of material fact, the court must decide as a matter of law whether the claim is barred. *Holmes v Mich Capital Med Ctr*, 242 Mich App 703, 706; 620 NW2d 319 (2000).

The trial court ruled that all transactions involving an invoice that contained an arbitration clause were subject to arbitration. The arbitration clauses in those invoices provided, in relevant part:

> ARBITRATION OF CLAIMS AND DISPUTES AND WAIVER OF JURY TRIAL. Any disputes or claims of any kind, including but not limited to the display, promotion, auction, purchase, sale or delivery of art, items, or appraisals shall be brought solely in non-binding arbitration and not in any court or to any jury. . . . All decisions respecting the arbitrability of any dispute shall be decided by the arbitrator(s). . . .

Plaintiffs argue that because they were challenging the validity of their agreements with defendants as a whole on the basis of fraud in the inducement, the trial court erred by ruling that the arbitration agreements could be enforced without first determining whether the agreements as a whole could be rescinded because of fraud.

Because the parties' transactions arise out of contracts involving interstate commerce, the arbitration clauses are subject to the Federal Arbitration Act (FAA), 9 USC 1 *et seq. Kauffman v The Chicago Corp*, 187 Mich App 284, 286; 466 NW2d 726 (1991). Where the FAA applies, it preempts any state law or policy that specifically invalidates arbitration agreements. *Abela v Gen Motors Corp*, 257 Mich App 513, 524-525; 669 NW2d 271 (2003), aff'd 469 Mich 603 (2004). However, 9 USC 2 recognizes that there must first be a valid and enforceable agreement to arbitrate, which is an issue that may be decided under state contract law. *DeCaminada v Coopers & Lybrand, LLP*, 232 Mich App 492, 502 n 7; 591 NW2d 364 (1998).

Under 9 USC 2, state law involving contract defenses, including fraud, can invalidate an arbitration agreement without contravening the FAA. *Doctor's Assoc, Inc v Casarotto*, 517 US 681, 686-687; 116 S Ct 1652; 134 L Ed 2d 902 (1996). On this basis, plaintiffs argue that it was necessary for the trial court to first decide whether the parties' underlying contracts were valid before enforcing the arbitration clauses.

We believe that *Scanlon v P & J Enterprises*, 182 Mich App 347; 451 NW2d 616 (1990), is dispositive of plaintiffs' challenges to the arbitration clauses of their agreements. Plaintiffs are arguing that their agreements with defendants are invalid as a whole, and should be voided based on fraud. Plaintiffs have not alleged that the arbitration terms themselves were induced by fraud. Like in *Scanlon*, the arbitration clauses in the parties' agreements provide that any issues of arbitrability should be resolved by the arbitrator, and not the court. Because the parties' agreements contain such a clause, and the basis for plaintiffs' challenge to the validity of the agreements is not directed specifically to the agreements to arbitrate, the trial court correctly held that plaintiffs' claims are subject to arbitration. *Id*. at 350-351.

Because plaintiffs are asserting fraud as a basis for challenging their agreements as a whole, not specifically the arbitration provision, the trial court properly ruled that the arbitration agreements are enforceable, and any challenge to the validity of the agreements as a whole is for the arbitrator to decide.

## II. SCOPE OF ARBITRATION

In their cross-appeal, defendants argue that the trial court erred by refusing to extend the arbitration clause contained in invoices from the Oppenheims later transactions to earlier transactions by the Oppenheims that did not involve an invoice or agreement that contained an arbitration clause. Defendants argue that the scope of the arbitration clause in the latter agreements was broad enough to encompass the earlier transactions involving the same parties.

Whether a matter is subject to arbitration is determined by applying the following three-part test:

> 1) is there an arbitration agreement in a contract between the parties; 2) is the disputed issue on its face or arguably within the contract's arbitration clause;

and 3) is the dispute expressly exempted from arbitration by the terms of the contract. [*In re Nestorovski Estate*, 283 Mich App 177, 202; 769 NW2d 720 (2009).]

In the present case, the Oppenheims and defendants do not dispute that their later transactions were subject to an arbitration clause that provided:

> ARBITRATION OF CLAIMS AND DISPUTES AND WAIVER OF JURY TRIAL. Any disputes or claims of any kind, including but not limited to the display, promotion, auction, purchase, sale or delivery of art, items, or appraisals shall be brought solely in non-binding arbitration and not in any court or to any jury. . . . All decisions respecting the arbitrability of any dispute shall be decided by the arbitrator(s). . . .

At issue is the second factor from *In re Nestorovski Estate*, namely, whether disputes involving transactions that did not contain an arbitration clause are on their face or arguably within the scope of the arbitration clauses that undisputedly apply to the latter transactions. Defendants argue that the language "[a]ny disputes or claims of any kind" is broad enough to encompass disputes involving the earlier transactions.

Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he had not agreed to so submit. *Amtower v William C Roney & Co (On Remand)*, 232 Mich App 226, 234; 590 NW2d 580 (1998). The parties' agreement determines the scope of arbitration. *Rooyakker & Sitz, PLLC v Plante & Moran, PLLC*, 276 Mich App 146, 163; 742 NW2d 409 (2007).

In *Cohen v Park West Galleries*, unpublished opinion per curiam of the Court of Appeals, issued April 5, 2012 (Docket. No. 302746) (MURRAY, J, dissenting in part), we addressed this precise issue involving the same language. The majority concluded that the arbitration clause in the later invoices did not govern prior transactions between the same parties. The dissent would have ruled otherwise on the basis that the very broad arbitration clause in the invoice, which covered "any and all claims," in fact covered all claims. We adopt[1] and repeat that opinion here:

> There is no dispute that the arbitration provision at issue is very broad, as it provides "that any disputes or claims of any kind including but not limited to the display, promotion, auction, purchase, sale or delivery of art, items, or appraisals shall be brought solely in non-binding arbitration and not in any court or to any jury." Hence, the question is whether this broad language encompasses disputes arising under prior contracts that did not contain arbitration provisions. As defendants argue, we must start with the proposition announced by our Supreme Court more than four decades ago, where it held in *Kaleva-Norman-Dickson Sch Dist No 6, et al v Kaleva-Norman-Dickson School Teachers' Ass'n*, 393 Mich 583, 592; 227 NW2d 500 (1975):

---

[1] As an unpublished opinion *Cohen* is not binding under stare decisis. MCR 7.215(C)(1).

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the *arbitration clause* is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." . . . Absent an "*express provision* excluding [a] particular grievance from arbitration" or the "*most forceful evidence* of a purpose to exclude the claim", . . . the matter should go to arbitration[.] [*Id.*, quoting *United Steelworkers of America v Warrior & Gulf Navigation Co*, 363 US 574, 582-585; 80 S Ct 1347; 4 L Ed 2d 1409 (1960) (Emphasis in the original.)]

No Michigan decision has addressed this precise issue, and though the language of the agreement as interpreted under the guideposts of *Sch Dist No 6* would seem to resolve the issue in favor of defendants, some decisions from other jurisdictions provide some useful direction. One of the better cases discussing this issue is the South Carolina Court of Appeals' decision in *Vestry & Church Wardens of the Church of the Holy Cross v Orkin Exterminating Co, Inc*, 356 SC 202; 588 SE2d 136 (2003). In that case the church entered into a contract with Terminix in 1975 for the installation of a termite protection system, and the contract did not contain an arbitration clause. In June 2000, the church entered into a new contract with Terminix which contained an arbitration clause. Additionally, from 1976 to 1985, the church had a contract with Orkin. In 1987 the church entered into a new contract with Orkin, but neither the contract covering the 1976 to 1985 relationship, nor the 1987 agreement contained an arbitration provision. However, in 1998 the church and Orkin entered into a contract regarding a separate building, and that contract contained an arbitration clause.

Once the lawsuit was filed, both Orkin and Terminix filed motions to compel arbitration. The trial court denied both motions to compel, concluding that there was nothing in the 1998 Orkin contract nor the 2000 Terminix contract signifying a retroactive effect. The South Carolina Court of Appeals affirmed in part and reversed in part.[1] In addressing the primary issue, which is the same issue in this case, i.e., whether the subsequent contract's arbitration provision covered disputes arising under prior contracts between the parties, the court first summarized the guiding law as follows:

Courts have retroactively applied arbitration clauses to disputes arising under prior contracts, but in doing so, the courts have generally found the existence of a broadly worded clause which govern the overall relationship between the parties. . . . The common theme underlying these cases is that the parties expressly agreed that *all* controversies between them, not just those appurtenant to the contract containing the clause, were to be submitted to arbitration. That being the case, the source of the claim or injury is not dispositive, for the parties have manifested an intention to arbitrate all of their disputes arising from their business

relations, not just those arising under a particular contract. [*Vestry*, 356 SC at 207-208 (footnote and citations omitted; emphasis in the original).]

The court then noted that where "the language of the arbitration clause is not as broad, courts have refused to mandate the arbitration of disputes unrelated to the contract containing the clause." *Vestry*, 356 SC at 208-209. The court then articulated the following principles:

> We derive from these cases that the mere fact that an arbitration clause might apply to matters beyond the express scope of the underlying contract does not alone imply that the clause should apply to every dispute between the parties. For example, a clause compelling arbitration for any claim "arising out of or relating to this agreement" may cover disputes outside the agreement, but only if those disputes relate to the subject matter of that agreement. . . . On the other hand, if the clause contains language compelling arbitration of any dispute arising out of the relationship of the parties, it does not matter whether the particular claim relates to the contract containing the clause; it matters only that the claim concerns the relationship of the parties. Under *Zabinski*, such a clause would have the broadest scope because it could be interpreted to apply to every dispute between the parties. [*Id*. at 209-210 (citations omitted).]

In light of this, the court held that the Orkin arbitration clause did not apply to prior disputes arising under old contracts because it had language limiting the clause only to disputes arising out of or relating to the agreement in which it was contained, and it was not so broad as to cover all previous claims involving unrelated areas. The court did, however, reverse the denial of Terminix's motion to compel arbitration, as the Terminix arbitration provision applied to "*all matters in dispute* between [them]" which the court considered to be very broad and "more akin to the language generally held to reflect an intention to apply to matters arising out of the relationship of the parties." *Id*. at 213. (Emphasis in the original.) Cases coming to the same conclusion using the same rationale are, amongst others, *Levin v Alms & Assoc, Inc*, 634 F3d 260, 268-269 (CA 4, 2011), and *Zink v Merrill Lynch Pierce Fenner & Smith, Inc*, 13 F3d 330, 332 (CA 10, 1993).

There is some support for the notion that when the prior contractual relations are sporadic and separated by a good deal of time, and there is no language within the arbitration provision *specifically providing for* application to prior disputes under prior contracts, the arbitration clause should only apply to claims arising under the last contract. In *Hendrick v Brown & Root, Inc*, 50 F Supp 2d 527 (ED Va, 1999), for example, the court held that because the last employment contract between the parties did not specifically indicate that it applied to disputes arising from prior contractual relations, it could "be said with

-6-

positive assurance that the words chosen by Brown & Root to evince the intent of the parties about what they were to arbitrate do not require arbitration of disputes which had accrued before the execution of the fourth employment contract" between the parties. *Hendrick*, 50 F Supp 2d at 534.

However, the standards utilized in *Hendrick* seem at odds with Michigan law as articulated in *Sch Dist No 6*, for in *Hendrick* the court required that the provision specifically state that it applies to prior disputes while under *School District No 6*, unless the clause contains limiting language, it should apply to all disputes. Additionally, concluding that these arbitration clauses apply to disputes relating to past contracts is not inconsistent with the general rule that contracts are not to be applied retroactively, for that general rule is still guided by the proposition that the language of the contract controls, see *DaimlerChrysler Corp v Wesco Distribution, Inc*, 281 Mich App 240, 248; 760 NW2d 828 (2008), and this broad language would seem to cover all disputes, especially when viewed in the context of the policy in favor of arbitration.[2]

---

[1] Initially, the court indicated that it was applying the law developed under the Federal Arbitration Act, 9 USC § 1 *et seq.*, but that that law was similar to South Carolina law. *Vestry*, 356 SC at 206-207.

[2] This conclusion does not run afoul of the cases cited by the [dissent] regarding contracts generally being treated separately. Under [our] approach to this issue, all contracts are treated as separate contracts, the only difference being the effect of the broad arbitration language contained in the last contract. [All brackets and ellipses in *Cohen* except the brackets in footnote 2.]

---

The United States Court of Appeals for the Sixth Circuit has also concluded that a broad written arbitration clause covered disputes between the same parties that arose under a prior oral agreement. See *Watson Wyatt & Co v SBC Holdings Inc*, 513 F3d 646, 650-651 (CA 6, 2008) (arbitration provision that applied to "any dispute or claim arising from or in connection with this agreement or the services provided by Watson Wyatt" covered disputes arising from a prior oral agreement between the parties) (emphasis omitted). Each of these foreign jurisdiction decisions are consistent with Michigan law that both applies contract clauses according to their plain language ("any and all" means "any and all" when there are no agreed upon limitations), *Kaleva-Norman-Dickson School Dist No 6*, 393 Mich at 592, and our well-developed law that Michigan courts "resolve all conflicts in favor of arbitration." *Rooyaker & Sitz, PLLC v Plante & Moran PLLC*, 276 Mich App 146, 163-164; 742 NW2d 409 (2007). Had the parties carved out an exception in the latest arbitration agreements indicating that the broad language did not apply to disputes arising under prior contracts, plaintiffs would prevail under *Kaleva-Norman-Dickson School Dist No 6*, but they did not provide any such limiting language. Consequently, we enforce the plain language within the invoice and hold that because the parties contractually agreed to arbitrate any and all claims arising between them, the trial court should have granted defendants' motion for summary disposition as to all of the Oppenheims' claims, as they are all subject to arbitration.

Finally, because the arbitration provision covered all prior disputes, resolution of the fraudulent concealment issue is unnecessary. Whether a claim is barred by the statute of limitations would be for the arbitrator to decide. *Amtower v William C Roney & Co (On Remand)*, 232 Mich App 226, 232-233; 590 NW2d 580 (1998).

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Kurtis T. Wilder