# STATE OF MICHIGAN

# COURT OF APPEALS

KERRY JENDRUSINA,

        Plaintiff-Appellant,

v

SHYAM MISHRA, M.D., and SHYAM N.
MISHRA, M.D., P.C.,

        Defendants-Appellees.

FOR PUBLICATION
August 4, 2016

No. 325133
Macomb Circuit Court
LC No. 2013-003802-NH

Before: GLEICHER, P.J., and JANSEN and SHAPIRO, JJ.

JANSEN, J. (*dissenting*).

I respectfully dissent because I believe that the limitations period began to run when plaintiff learned that he had kidney failure in January 2011. Accordingly, I would affirm the trial court's order granting summary disposition in favor of defendants.

In 1988, defendant Dr. Shyam Mishra began treating plaintiff as his primary care physician. According to plaintiff's complaint, Dr. Mishra diagnosed him with renal insufficiency in 2007. The evidence presented by the parties establishes that Dr. Mishra began regularly testing plaintiff's kidneys at least as early as 2007. The tests continued on a regular basis. According to plaintiff, Dr. Mishra did not always communicate with plaintiff regarding his test results. Plaintiff testified that he did not know why Dr. Mishra was testing his kidneys, but he did know that Dr. Mishra was testing his kidney levels. He believed that the tests were connected with the edema he began to experience in 2008. He explained, "I didn't hear until the leg started swelling they were monitoring something for kidneys." Plaintiff testified that Dr. Mishra never informed him that he suffered from kidney failure or that he should see a nephrologist.

Plaintiff testified in his deposition that Dr. Mishra told him in 2008 that his kidney test results were not a cause for concern and that, although his kidney levels were a bit elevated, there was nothing to worry about because his "kidney number" was under five. In 2009, Dr. Mishra conducted an ultrasound of plaintiff's kidneys and told plaintiff that his kidneys were "fine." He did not tell plaintiff that plaintiff had chronic renal failure. On January 3, 2011, plaintiff reported to the hospital with flu-like symptoms. The emergency room doctors found that plaintiff was in kidney failure and diagnosed him with acute end-stage renal failure. Plaintiff began regular dialysis. More than 20 months later, on September 20, 2012, plaintiff had

-1-

a conversation with Dr. Tayeb, a nephrologist. Plaintiff testified that, during that conversation, Dr. Tayeb told him that he should have been sent to a nephrologist in 2008. Plaintiff testified that Dr. Tayeb stated:

> "The doctor should have sent you. I could have kept you off of dialysis. You should have came [sic] here years ago. I could have prevented you from being on dialysis and you going into full kidney failure, if you would have came [sic] to a nephrologist early on."

Following that conversation, on March 18, 2013, plaintiff provided Dr. Mishra and Dr. Mishra's practice with a notice of intent to sue. The present case was then filed on September 17, 2013. Relevant to this appeal, defendants moved for summary disposition pursuant to MCR 2.116(C)(7) and (10), arguing that the claim was time-barred under the statute of limitations. The trial court agreed with defendants and concluded that plaintiff should have discovered his claim by January 3, 2011. Therefore, the trial court granted summary disposition in favor of defendants pursuant to MCR 2.116(C)(7), finding that plaintiff's claim was barred by the statute of limitations.

I respectfully disagree with the majority's conclusion that plaintiff should not have discovered his claim until he talked with Dr. Tayeb on September 20, 2012. It is undisputed that plaintiff's complaint fell outside of the general two-year statute of limitations in MCL 600.5805(6). Instead, plaintiff asserts that the alternate six-month discovery rule statute of limitations in MCL 600.5838a(2) should apply to his claims. The Michigan Supreme Court in *Solowy v Oakwood Hosp Corp*, 454 Mich 214, 222; 561 NW2d 843 (1997), explained that "the plaintiff need not know for certain that he had a claim, or even know of a likely claim before the six-month period would begin." Instead, the plaintiff merely needs to know of a *possible* cause of action. *Id*. The rule does not require a plaintiff to be able to prove every element of a cause of action in order for the limitations period to begin running. *Id*. at 224. The Court explained, "In applying this flexible approach, courts should consider the totality of information available to the plaintiff, including his own observations of physical discomfort and appearance, his familiarity with the condition through past experience or otherwise, and his physician's explanations of possible causes or diagnoses of his condition." *Id*. at 227. Our Supreme Court has also explained that "[t]he discovery rule applies to the discovery of an injury, not to the discovery of a later realized consequence of the injury." *Moll v Abbott Laboratories*, 444 Mich 1, 18; 506 NW2d 816 (1993). Additionally, "[t]his Court has held that the discovery rule does not act to hold a matter in abeyance indefinitely while a plaintiff seeks professional assistance to determine the existence of a claim." *Turner v Mercy Hosps & Health Servs of Detroit*, 210 Mich App 345, 353; 533 NW2d 365 (1995).

Plaintiff admits that he was aware that Dr. Mishra was testing his kidneys and that Dr. Mishra never said anything was wrong. He testified in his deposition that in 2008, Dr. Mishra told him that his "kidneys [were] a little bit elevated but not to the point where there was anything to worry about." In 2009, Dr. Mishra ordered an ultrasound test for plaintiff's kidneys, and Dr. Mishra informed plaintiff that the ultrasound indicated that plaintiff's kidneys were "fine." On January 3, 2011, when plaintiff became aware of this diagnosis that was so plainly contradictory to everything Dr. Mishra had said up until that point, he became "equipped with

-2-

sufficient information to protect [his] claim." See *Moll*, 444 Mich at 24. Thus, the limitations period expired six months after this date. See *id*.

Plaintiff argues that he was not able to make the connection between the new diagnosis and Dr. Mishra's alleged negligence until September 20, 2012. The Michigan Supreme Court has stated, however, that this connection is not necessary: "[T]he 'possible cause of action' standard does not require that the plaintiff know that the injury . . . was in fact or even likely caused by the [doctor's] alleged omissions." *Solowy*, 454 Mich at 224. Further, this Court has previously held that "[a] plaintiff must act diligently to discover a possible cause of action and 'cannot simply sit back and wait for others' to inform [him] of its existence." *Turner*, 210 Mich App at 353 (citation omitted). Considering this, it is plain that plaintiff should have discovered his potential claim on January 3, 2011. Therefore, the statute of limitations in MCL 600.5838a(2) expired six months after January 3, 2011. Plaintiff's notice of intent was delivered on March 18, 2013, which was well after the six-month limitations period.

The majority concludes that defendants failed to demonstrate that plaintiff should have known that he had a possible cause of action for malpractice when he was hospitalized in January 2011. The majority points to the fact that Dr. Mishra did not inform plaintiff that he had kidney disease and that plaintiff did not have access to his records or lab reports. The majority reasons that plaintiff did not know he had a previous history of kidney disease and was unaware that his kidney disease was a slowly progressing condition, rather than an acute incident.

I disagree with the majority's conclusion that the fact that plaintiff was unaware that he had a progressive kidney disease demonstrates that he should not have known of a possible cause of action. First, the majority relies on evidence outside of the record in concluding that kidney failure can occur quickly and has several causes. The majority conducted its own research regarding the pathophysiology of kidney failure and failed to limit its review to the medical evidence in the record. The parties did not discuss the causes or progression of kidney failure in their briefs on appeal, and the majority's discussion of the pathophysiology of kidney disease contains medical conclusions that require expert testimony and that are outside the expertise of the majority. Second, contrary to the majority's conclusion, plaintiff knew that he had elevated kidney test levels. He also knew that Dr. Mishra performed an ultrasound test on his kidneys, which would have alerted a reasonable person to the fact that there may be an issue with his or her kidneys. In spite of plaintiff's elevated kidney levels and the ultrasound test, Dr. Mishra informed plaintiff that his kidneys were fine and that there was nothing to worry about. Plaintiff should have known he had a possible cause of action when he learned that he had kidney disease, in spite of Dr. Mishra's statements to the contrary. Plaintiff's kidney failure was not a sudden event disconnected to his previous medical diagnoses and treatment. Instead, plaintiff was aware of the fact that Dr. Mishra was monitoring his kidneys and that he had elevated kidney levels, and he knew that Dr. Mishra performed an ultrasound test specifically to ensure that there was no issue with his kidneys. Therefore, plaintiff should have known of a possible cause of action when he learned that he had kidney failure on January 3, 2011.

The majority also reasons that a reasonable, ordinary person would not understand the medical terminology or the pathophysiology connected with kidney diseases. However, plaintiff's understanding of the terminology and physiology of his condition was not necessary in order for him to know of a possible cause of action. Indeed, Dr. Mishra discussed the issue with

plaintiff in terms that plaintiff could understand by informing plaintiff that his "kidney number" was a bit elevated, but informing him that he had nothing to worry about. Plaintiff's deposition testimony reveals that he understood that Dr. Mishra was monitoring his kidneys. Plaintiff was also aware that Dr. Mishra ordered an ultrasound test for his kidneys and that Dr. Mishra concluded that his kidneys were fine after looking at the test. Thus, this was not a situation in which plaintiff was presented with information that he could not understand. Instead, plaintiff was aware that Dr. Mishra was monitoring his kidneys for a potential problem, but Dr. Mishra reassured him that there was no issue.

Plaintiff's testimony indicated that he had actual knowledge of the existence of his claim once Dr. Tayeb informed him that he could have avoided kidney failure if his physician referred him to a nephrologist earlier. However, the statute requires the court to consider when a plaintiff discovered or *should have* discovered the existence of his claim. Plaintiff should have discovered the existence of a cause of action on January 3, 2011, and he failed to commence the action within six months of this date. Accordingly, I conclude that plaintiff's action was barred by the limitations period in MCL 600.5838a(2), and summary disposition was properly granted pursuant to MCR 2.116(C)(7). Therefore, I would affirm the trial court's order granting summary disposition in favor of defendants.

/s/ Kathleen Jansen

-4-