FILED
United States Court of Appeals
Tenth Circuit

January 12, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOHN HERMANN,

    Plaintiff - Appellant,

v.

HARTFORD CASUALTY INSURANCE
COMPANY,

    Defendant - Appellee.

No. 16-1145
(D.C. No. 1:11-CV-03188-REB-MEH)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

    John Hermann filed suit against Hartford Casualty Insurance Company, alleging

that Hartford unreasonably denied and delayed payment on his claim under a workers'

compensation insurance policy.  Hartford moved for summary judgment, arguing that

Mr. Hermann's action should be barred under the doctrine of judicial estoppel because

Mr. Hermann did not disclose his claim against Hartford in his bankruptcy petition.  The

district court granted the motion and entered judgment in Hartford's favor.  Proceeding

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

pro se, Mr. Hermann appeals from that ruling. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

Mr. Hermann was injured in an auto accident in December 2009. Because the other driver was uninsured, he sought recovery for his injuries from his own auto insurance carrier, under his uninsured motorist coverage. He also submitted a claim for workers' compensation benefits under a Hartford policy. Hartford initially denied Mr. Hermann's claim in January 2010, but after further investigation, Hartford accepted the claim in May 2010.

A month later, Mr. Hermann and his wife ("Debtors") filed a joint Chapter 7 voluntary bankruptcy petition. There is no dispute that, at that time, Mr. Hermann believed that Hartford had wrongly denied his claim for workers' compensation benefits. *See* Supp. App., Vol. I at 107-09. Debtors submitted a Statement of Financial Affairs in the bankruptcy proceeding, including schedules listing their assets and their claimed exemptions. In their list of personal property on Schedule B, Debtors disclosed "Potential Personal Injury Award" under the category of "contingent and unliquidated claims of every nature." *Id.* at 60. They did not list any other claim on Schedule B. On Schedule C, Debtors claimed that "Potential Personal Injury Award" was exempt under a Virginia statute. *Id.* at 63. Mr. Hermann signed declarations under penalty of perjury that Debtors' Statement of Financial Affairs, including the information in the various schedules, was true and correct.

2

At a creditors' meeting in August 2010, the bankruptcy Trustee inquired about the status of two businesses that Debtors had listed in their bankruptcy schedules.[1] Mr. Hermann responded that the businesses were defunct as a result of his auto accident in December 2009. The following colloquy between the Trustee and Mr. Hermann followed:

> Trustee: . . . . And you are looking at a personal injury award from that car accident?
>
> Mr. Hermann: Well, there will be something. I have no earthly idea what it's going to be.
>
> Trustee: Or when?
>
> . . . .
>
> Mr. Hermann: I have not reached [maximum medical improvement]. They're talking about a permanent disability.
>
> Trustee: So you're still in medical treatment for the --
>
> Mr. Hermann: Yes, ma'am.
>
> Trustee: -- car accident? How are you paying for living expenses, at present?
>
> Mr. Hermann: Workman's Comp has finally admitted some liability. So I've received a [temporary partial disability] payment. Hopefully weekly, sometimes it's every two weeks. There's a copy of the most recent check. There's a --
>
> Trustee: Temporary partial, until they finalize their evaluation?
>
> Mr. Hermann: Right.

*Id.*, Vol. II at 246-47.

---

[1] Mr. Hermann filed a transcript of the creditors' meeting in the district court. *See* Supp. App., Vol. II at 241-48. Although the transcript reflects questions being posed by "the Court," *id.*, Mr. Hermann indicates that the bankruptcy Trustee presided at the meeting, *see id.* at 236.

3

At the creditors' meeting, the Trustee also directed Debtors to amend their Schedule C to claim exemptions under federal rather than Virginia law.  Debtors subsequently filed an amended Schedule C, claiming that "Potential Personal Injury Award" was exempt under 11 U.S.C. §§ 522(d)(11)(D).  *See* Suppl. App., Vol. I at 154; *see also* Amended Schedule C, *In re Hermann*, No. 10-26229 (Bankr. D. Colo. Aug. 5, 2010), ECF No. 15.[2]  The bankruptcy court entered an order discharging Debtors in November 2010.

Mr. Hermann filed this action against Hartford in October 2011, alleging that Hartford had unreasonably denied and delayed coverage under the workers' compensation policy.  Hartford moved for summary judgment, arguing that Mr. Hermann should be judicially estopped from asserting this claim because he did not list it as an asset in his bankruptcy schedules.  Mr. Hermann did not file a response to Hartford's motion; instead, he moved to reopen his bankruptcy case "to amend his Schedules to specifically identify as an asset of the Estate a bad-faith insurance lawsuit that [was] pending in the [district court]."  Supp. App., Vol. I at 148.  The district court administratively closed this case while Mr. Hermann pursued reopening of his bankruptcy case.

---

[2] Some of the relevant filings in Debtors' bankruptcy case, including their amended Schedule C, are not included in the record on appeal.  But like the district court, *see* Supp. App., Vol. II at 336, we take judicial notice of the record in Debtors' bankruptcy case, *see United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("Although we are not obliged to do so, we may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.").

The bankruptcy court granted Mr. Hermann's motion to reopen, and Debtors ultimately filed an amended Schedule B listing a potential claim against Hartford, and a further amended Schedule C asserting that the claim against Hartford was exempt under 11 U.S.C. §§ 522(d)(10)(C) and (d)(11)(E). *See* Amended Schedules B and C at 2, 4, *In re Hermann*, No. 10-26229 (Bankr. D. Colo. Jul. 15, 2013), ECF No. 51. The bankruptcy court also approved an agreement between the Trustee and Debtors assigning the bankruptcy estate's interest in his claim against Hartford to Mr. Hermann.

When the district court reopened this case, Hartford renewed its summary judgment motion and Mr. Hermann moved for leave to file an affidavit from his former bankruptcy counsel, as a supplement to the summary judgment record. The district court granted Mr. Hermann's motion, "but without any implication that the court finds the material tendered with the motion to be evidence properly considered in resolving a motion for summary judgment." Supp. Appl., Vol. II at 342. In granting Hartford summary judgment, the court held that Mr. Hermann's listing of "Potential Personal Injury Award" in his bankruptcy schedules was insufficient to disclose his potential claim against Hartford for unreasonable denial of and delay in processing his workers' compensation insurance claim. Finding that Mr. Hermann had taken clearly inconsistent positions in the bankruptcy court and in the district court regarding the existence of his claim against Hartford, the court granted Hartford summary judgment on the basis of judicial estoppel.

5

## II.     Discussion

In reviewing a district court's grant of summary judgment, we view the facts and reasonable inferences in the light most favorable to Mr. Hermann, the nonmoving party.  *See Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1155-56 (10th Cir. 2007).  If the district court has properly applied this standard to the facts, we review its decision to judicially estop Mr. Hermann from pursing his claim against Hartford for an abuse of discretion.  *See id.* at 1156.  "A court abuses its discretion only when it makes a clear error of judgment, exceeds the bounds of permissible choice, or when its decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment."  *Id.* (internal quotation marks omitted).  In addition, an error of law is presumptively an abuse of discretion.  *See S. Utah Wilderness All. v. Bureau of Land Mgmt.*, 425 F.3d 735, 750 (10th Cir. 2005).

"The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment and to prevent improper use of judicial machinery."  *Queen v. TA Operating, LLC*, 734 F.3d 1081, 1087 (10th Cir. 2013) (internal quotation marks, ellipsis, and brackets omitted).  Courts typically consider three non-exclusive factors in determining whether to apply judicial estoppel:

> First, a party's subsequent position must be clearly inconsistent with its former position.  Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the *perception* that either the first or the second court was misled.  Finally, the court should inquire whether the party seeking to assert

6

an inconsistent position would gain an unfair advantage in the litigation if not estopped.

*Id.* (internal quotation marks and brackets omitted). "Judicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Eastman*, 493 F.3d at 1158 (internal quotation marks omitted).

The district court concluded that the relevant factors weighed in favor of judicial estoppel in this case. First, it held that Mr. Hermann's listing of "Potential Personal Injury Award" in his bankruptcy schedules did not disclose his claim against Hartford. The court reasoned, "Mr. Hermann asserts in this case a claim for delay and denial of insurance benefits. It is not accurate to call this case a personal injury case and those words are inadequate to reasonably alert a bankruptcy court and trustee to the existence of a claim of this type." Supp. App., Vol. II at 339. Therefore, the court held that Mr. Hermann had taken inconsistent positions in the bankruptcy court and the district court on whether he had a claim against Hartford. Second, Mr. Hermann had succeeded in persuading the bankruptcy court to accept his former and inconsistent position by obtaining a discharge of his debts based upon his sworn Statement of Financial Affairs. Lastly, the district court held that judicial estoppel was appropriate in this case to protect the integrity of the judicial system.

Mr. Hermann argues on appeal that his listing of "Potential Personal Injury Award" in his bankruptcy schedules was sufficient as a matter of law to disclose his claim against Hartford for unreasonable delay and denial of insurance benefits; that

7

even if he failed to disclose his claim against Hartford, judicial estoppel was not warranted because the mistake was inadvertent; and that the district court erred by failing to consider other, lesser remedies before imposing judicial estoppel.

## A.     Sufficiency of Disclosure

"[A] debtor who voluntarily submits him or herself to the jurisdiction of the bankruptcy court to obtain the benefit of a discharge of debts, must fulfill certain duties to insure that estate assets are administered in accordance with applicable law." *Midkiff v. Stewart (In re Midkiff)*, 342 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted). "The operation of the bankruptcy system depends on honest reporting." *Payne v. Wood*, 775 F.2d 202, 205 (7th Cir. 1985). Upon filing for bankruptcy, Mr. Hermann was required to list all the assets of his estate. 11 U.S.C. § 521(a)(1)(B)(i). Those assets included "all legal claims and causes of action, pending or potential, which a debtor might have." *Eastman*, 493 F.3d at 1159.

Although the duty of disclosure is clear, the statute does not address the degree of detail required. *See Donarumo v. Furlong (In re Furlong)*, 660 F.3d 81, 87 (1st Cir. 2011); *In re Mohring*, 142 B.R. 389, 395 (Bankr. E.D. Cal. 1992) (noting there are "no bright-line rules for how much itemization and specificity is required"). Addressing whether a particular disclosure is sufficiently specific, courts have consistently held that "[t]he debtor must furnish enough information to put the trustee on notice of the wisdom of further inquiry." *Payne*, 775 F.2d at 206; *accord Furlong*, 660 F.3d at 87; *Cusano v. Klein*, 264 F.3d 936, 946-47 (9th Cir. 2001)

8

(noting that debtor's listing of an asset "was not so defective that it would forestall a proper investigation" and that the disclosure "provided inquiry notice"). As another court has put it, the requirement is "reasonable particularization under the circumstances." *Mohring*, 142 B.R. at 395.

Mr. Hermann argues that, under this standard, his listing of "Potential Personal Injury Award" on Schedule B was sufficient to disclose both his claim for damages related to the auto accident *and* his claim against Hartford for unreasonable denial of and delay in processing his claim for worker's compensation benefits. For this proposition, Mr. Hermann relies on an unsigned, unsworn statement by his bankruptcy counsel. Although the district court permitted him to file his counsel's statement, the court held that it was not evidence properly considered on summary judgment. Indeed, Mr. Hermann's counsel's statement presents a legal argument rather than attesting to relevant facts. *See* Supp. App., Vol. II at 282-83. Our review of decisions applying the relevant legal standard indicates that Mr. Hermann's disclosure of "Potential Personal Injury Award" was not sufficient to provide inquiry notice regarding his claim against Hartford.

Mr. Hermann cites *Bonner v. Sicherman (In re Bonner)*, 330 B.R. 880, 2005 WL 2136204, at *4-5 (B.A.P. 6th Cir. Sept. 6, 2005) (unpublished), in which the court held that the debtors' listing of "Auto Accident Claim" in their bankruptcy schedules was sufficient to disclose a claim for personal injury as a result of the auto accident. The court rejected the trustee's contention that this disclosure referred solely to a personal property claim, stating that "it is common knowledge that an

9

automobile accident may, and often does, result in personal injury." *Id.* at *4. Noting various types of injury that could arise out of such an accident—"pain and suffering, loss of income, medical expenses, loss of consortium, property damage and any other expenses incurred as a result of the accident"—the court declined to hold that each of these claims must be listed separately. *Id.* The court in *Bonner* also considered the exemption the debtors claimed for the asset: "In the event there was any doubt that the auto accident claim listed by debtors involved a personal injury, that doubt would and should have been removed by the debtors' claimed . . . exemption for 'personal bodily injury' resulting from the automobile accident." *Id.*

*Bonner* is distinguishable from this case. First, Mr. Hermann's listing of "Potential Personal Injury Award" was insufficient to put the Trustee on notice of a possible claim for unreasonable delay and denial of workers' compensation benefits under the Hartford insurance policy. In *Bonner*, the court reasoned that the debtors' disclosure of "Auto Accident Claim" was sufficient to provide inquiry notice of claims regarding all of the various injuries commonly resulting from an auto accident. *Id.* Here, in contrast, a bad-faith insurance claim is not similarly related to a "Potential Personal Injury Award." Indeed, the record shows that Mr. Hermann's disclosure did not alert the Trustee to inquire about his claim against Hartford. At the creditors' meeting, the Trustee queried Mr. Hermann about the status of his businesses, "a personal injury award from [the] car accident," and the source of his current income. Supp. App., Vol. II at 245-46. As to the latter, he responded that he was receiving workers' compensation payments. The trustee did not ask him about

10

any bad-faith insurance claim.  Nor did Mr. Hermann mention that he had any such claim.  *See id.* at 246-47.

Second, unlike in *Bonner*, Mr. Hermann's asserted basis for exempting "Potential Personal Injury Award" did not confirm that the asset disclosed included his claim against Hartford.  He cited 11 U.S.C. § 522(d)(11)(D), which exempts "a payment . . . on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor."  Mr. Hermann does not cite, nor have we found, a case holding that this exemption for payments for "personal bodily injury" applies to a claim alleging unreasonable delay or denial of workers' compensation insurance benefits.  Neither did Mr. Hermann rely on this same provision, § 522(d)(11)(D), when he amended his schedules after reopening his bankruptcy case.  Rather, in asserting an exemption for his claim against Hartford, he cited § 522(d)(10)(C), which exempts "[t]he debtor's right to receive . . . a disability, illness, or unemployment benefit."

The circumstances of this case are most similar to *Tilley v. Anixter Inc.*, 332 B.R. 501, 511 (D. Conn. 2005), in which the court held that the plaintiff failed to disclose in her bankruptcy schedules a claim alleging intentional infliction of emotional distress relating to her ex-husband's concealment of income in connection with his child support obligation.  *See id.*  In her personal property schedule, the plaintiff had listed a claim "for back child support" against her ex-husband and his employer.  *Id.* at 510 (internal quotation marks omitted).  She used the same language when scheduling her exempt assets, citing 11 U.S.C. § 522(d)(10)(D), which exempts

11

"[t]he debtor's right to receive . . . alimony, support, or separate maintenance."
*See Tilley*, 332 B.R. at 510.

The *Tilley* court concluded that the language the plaintiff used to describe her claim in the bankruptcy proceeding, read in light of her asserted basis for an exemption, showed that she disclosed only a claim for unpaid child support. *Id.* It held that she had a duty to separately schedule her claims for back child support and intentional infliction of emotional distress, even though she alleged that the latter claim arose out of her ex-husband's failure to pay adequate child support. *Id.* at 510-11. In reaching this holding, the court distinguished *Bonner*'s conclusion, based on "common knowledge," that an auto accident is likely to result in a personal injury claim, noting that "a claim 'for back child support' does not similarly inform a trustee of the need to investigate whether the plaintiff had a claim for intentional infliction of emotional distress arising out of fraud in connection with the reporting of [her ex-husband's] income." *Id.* at 511.

We agree with the reasoning in *Tilley* and reach a similar conclusion here: Mr. Hermann's disclosure of "Potential Personal Injury Award," combined with his claimed basis for exemption, was insufficient as a matter of law to put the Trustee on inquiry notice regarding his claim against Hartford. Mr. Hermann therefore failed to disclose that claim in his bankruptcy proceeding.

### B. Inadvertence of Failure to Disclose

Mr. Hermann argues that, even if he failed to disclose his claim against Hartford in his bankruptcy case, judicial estoppel was not warranted because the

12

mistake was inadvertent. But "courts addressing a debtor's failure to satisfy the legal duty of full disclosure to the bankruptcy court have deemed such failure inadvertent or mistaken only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Eastman*, 493 F.3d at 1157 (internal quotation marks omitted). Here, there is no dispute that Mr. Hermann was aware of his claim against Hartford when he filed his bankruptcy schedules. And like the debtor in *Eastman*, he had a motive to conceal his claim against Hartford so that he could obtain a discharge of his debts free and clear of his creditors. *See id.* at 1159 ("The ever present motive to conceal legal claims and reap the financial rewards undoubtedly is why so many of the cases applying judicial estoppel involve debtors-turned-plaintiffs who have failed to disclose such claims in bankruptcy."). Mr. Hermann offers no basis for application of a different analysis in this case.

## C. District Court's Failure to Consider a Lesser Sanction

Lastly, Mr. Hermann argues that the district court erred in failing to consider whether a lesser sanction would have been sufficient to protect the integrity of the judicial system, contrary to *Vehicle Market Research, Inc. v. Mitchell International*, 767 F.3d 987 (10th Cir. 2014). In *Vehicle Market Research*, we endorsed a cautious application of the judicial estoppel doctrine because it "is a powerful weapon to employ against a party seeking to vindicate its rights, and there are often lesser weapons that can keep alleged inconsistent statements in check while preserving a party's option to have its day in court." *Id.* at 993. In that case we reversed a district

13

court's application of judicial estoppel because the moving party failed to demonstrate that the debtor had made clearly inconsistent statements. *Id.* at 989.

Although there may be circumstances where a district court abuses its discretion by failing to consider and apply a lesser sanction, this is not such a case. The "most obvious" lesser remedy we noted in *Vehicle Market Research*—allowing one party to impeach the other party at trial with his inconsistent statements, *id.* at 993—would not sufficiently address Mr. Hermann's inconsistent positions on the very existence of his claim against Hartford. And we reject his suggestion that the integrity of the judicial system was sufficiently protected because he promptly reopened his bankruptcy proceeding and amended his schedules to disclose his claim against Hartford. As we said in *Eastman*,

> [a]llowing [a debtor] to 'back up' and benefit from the reopening of his bankruptcy only after his omission ha[s] been exposed would suggest that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with truthful disclosure of the debtor's assets.

493 F.3d at 1160 (internal quotation marks and brackets omitted).

We hold that the district court did not abuse its discretion in applying the doctrine of judicial estoppel to bar Mr. Hermann from pursuing his action against Hartford alleging unreasonable delay and denial of his claim for workers' compensation benefits under a Hartford policy.

14

**D.     Pending Motions**

We grant Hartford's motion to strike the affidavit attached to Mr. Hermann's reply brief.  We also grant Mr. Hermann's application to proceed on appeal without prepayment of the appeal fee.  But in light of the income and assets listed in his application, we order Mr. Hermann to begin remitting partial payments of $50 per month to the district court until the filing fee for this matter is paid in full.

## III.    Conclusion

The judgment of the district court is affirmed.

Entered for the Court


Jerome A. Holmes
Circuit Judge